The court now calls cases 115-997 and 116-009, Consolidated for Hearing, the State of Perry C. Powell, I believe, v. John C. Wunsch, and the Phillips Law Offices et al. Are the parties ready to proceed? You may proceed. Good morning. Good morning, counsel, co-defense counsel, and may it please the court. My name is Patricia Argentati. I represent John Wunsch individually, Jeremy Deschaux, and John Wunsch, P.C., appellants in this matter. Could I implore you to keep your voice up? Okay, sorry. It's a little difficult to hear, particularly for the justices at the end of the bench. I will. So we want everybody to hear what you, counsel, have to say today. Thank you. I represent John Wunsch, Jeremy Deschaux, and John Wunsch, P.C., appellants in this case. Your Honors, the issue here is the duty of an attorney without dispute hired by an authorized representative of an estate, the administratrix in this case, to whom he owes his first and only and primary allegiance. Does that change when there's a wrongful death case, which is an asset of the estate and which the attorney proceeds on? Our contention is it does not change. The duty remains owed entirely to the administratrix of the estate. To say that the duty stretches beyond and the scope expands to any and all   of an estate, the administratrix of the estate, and the other officiaries in the wrongful death case would expand the duty that Illinois attorneys owe not only in estate cases, but P.I. cases, any wrongful death case, to any unnamed, possibly unidentified plaintiffs, and would impose a duty that the State of Illinois has never imposed on attorneys. And, in fact, the majority of jurisdictions in the United States do not impose on attorneys. Ms. Hardintoni, that's true. But how do we get around both the statute and our case both of which explicitly state that the wrongful death actions are brought for the sole benefit of the next of kin, and who are the true parties and interests? And, Justice Thomas, in my experience, the issue does not often come up. It is true that a wrongful death case is for the benefit of the beneficiaries, and the authorized representative is the only one who can bring them. However, we have situations, we have cases in Illinois where, if a dispute arises between the beneficiaries, the beneficiaries have a right of action. They retain separate counsel, and they have a right to go against the administratrix of the estate, the executor of the estate. The cases that we've cited in our briefs, including the Miller v. Kramarczyk case, Johnson v. Pervino, where the father claimed that he got less of a percentage of dependency than he should have gotten. The Keeling case, 3rd District, where the fourth wife was challenged by the biologic daughters. Their right of action is to retain their own counsel and to pursue the claim that they got less than what they should have. Unfortunately, our state puts us in a position in the wrongful death case where there's a question of percentage of dependency. That creates the potential conflict between the beneficiaries, that the beneficiaries are agreeing with whatever the percentages are within the discretion of the trial court, that there's not an issue. The problem comes up, and it was present in this case, where there's at least the potential, if not the actual conflict, that one beneficiary's percentage of dependency is going to challenge another beneficiary. In this case, Emma Smith elected to waive her percentage of one of the settlements. The plaintiff in this case, arguably, that would have benefited them. Does imposing a duty on the attorney for the estate impose a duty for him to go to Emma Smith and advise her it's against her interests to waive her percentage? Does that then put him in a conflict with Perry Powell, Jr., Perry Smith, that he is now advising a beneficiary, don't waive your percentage? Does that put him in a conflict with Perry Powell, Jr., that now he's going to get less? So this whole situation is exactly what imposing that kind of a duty on the estate's attorney would impose. And it's untenable. It puts him in an ethical and a legal quandary, and it potentially affects the duties, as I said, owed to any attorney who handles a wrongful death case, an estate case, a trust case, because it puts on that attorney, it puts on him and her the duty to investigate any claim disabilities, to investigate are there other heirs and beneficiaries out there, to investigate if each beneficiary is properly advised as to the decisions they're making. The duty in a wrongful death case for that attorney is to obtain the greatest and best benefit that he or she can possibly obtain for the benefit of the general estate. If there is no discrepancy between the beneficiaries, not a problem. If there is even the potential of a discrepancy between the beneficiaries, then a state's attorney cannot be held to be representing individual beneficiaries. The duty is to maximize the benefits of the beneficiary. In the facts of this case, there was no dispute, I don't think, between the parties, the ultimate parties in interest. Is that correct? Well, they never reached that point. However, Emma Smith, declining her portion supposedly for the benefit. My question is a little different from that. I was making an assumption, perhaps. But just the real question here, what is the duty of the attorney with regard to the distribution? Obviously, there can be different claims made, but does the attorney who gets the recovery on behalf of the ultimate beneficiaries have a duty to see that it is properly paid out, either by court order or to determine who is capable of handling? This is getting to my real question. Does he have a duty to see that the person receiving the payment can handle it? No. Okay. And, and So he can pay it out, they can pay it out to anybody, no matter what. Well, we have a court order here from Judge Egan who ordered the distribution. And again, that gets back to the duty question. We have a duty to make sure we are complying with the distribution order, which was done in this case. If you want to say there is a further duty beyond that, what is that person, the recipient, going to do with it, that goes exactly to the question of duty. And our position is, once you recover your best and highest recovery in the wrongful death case, once you present it to the court and obtain a court order for distribution, once you comply with distribution, to impose a duty beyond that now imposes a duty to protect the beneficiaries. And we are, it's our Counsel, didn't we say, in DeLuna, didn't we find that the attorney owes a fiduciary duty to the next of kin? No. And I think that the duty to the beneficiaries was not How does DeLuna apply here? DeLuna addressed primarily the statute of repose and whether the statute of repose was told or how it was affected. It never addressed the question of a duty owed by the attorney to the beneficiaries. That specific question, it's our contention, was not addressed in DeLuna. In fact, in the Oden case, we also cite, in fact, the Oden case said potential conflict is irrelevant to its determination. So it's our position that in this particular case, those cases, that reasoning does not apply. Well, Sgt. Toney, I want to go back to my first question, though. Is your response to the case law and the statute that it creates an untenable position because of the potential conflicts and the other jurisdiction? Because, and here's where I'm coming from. We say that the next of kin are the true parties in interest, right? We also, and as you've indicated, quite candidly, the next of kin are statutorily prohibited from representing their own interests. And you would agree with that. So isn't that a textbook example of an attorney being hired specifically for the purpose of benefiting a third party? No. And again, I go back to the fact of if you're representing the administratrix, there are certain duties that are owed to that client. Certain duties owed to that client. To extend the, that's our argument, to extend the duty beyond that may not raise an issue, may not raise a problem. But if it does raise a problem, for this court to impose a duty on all such attorneys that's owed to all actual and potential beneficiaries creates a situation for us attorneys in Illinois that's untenable. Because that places an obligation on us to locate, to find, to investigate, to advise every beneficiary. And in this case, although it did not reach that point, there is the real potential of having to advise Emma as far as her decision regarding waiving her interest in the proceeds of that settlement versus Perry Powell's interest in advising her not to waive it and then Perry Powell saying that would have been money that came to me. Why could the duty be under a certain set of facts that we're in a conflict position, and you may want to get your own attorney on this? Well, that's exactly what it should be. But it shouldn't be a duty imposed overall on any attorney who's representing an estate automatically has the duty that he or she also owes the same duties to any and all beneficiaries. And that's what the plaintiff is asking for in this case, that such a duty is imposed. Just briefly on the proximate cause issue, we also believe that proximate cause was not established here. It's a necessary element. And as this Court is well aware, actual damages have to be proved. And there's been nothing said before this Court that the plaintiff would have been in any different situation had the alleged negligence not occurred than he actually was. Thank you. Good morning. My name is Daniel Konacek, and I represent the Phillips Law Firm and Ms. Webb. Justice Carmeier, can I respond to your question about, you said, can you simply pay the money out? And the manner in which the Wrongful Death Act was set up, where you have to appoint the administrator, that would prohibit it in that circumstance. And I think the Carter case that was relied on by the appellate court in this instance talks about that. The administrator here, Leona, had a, what we call a fiduciary duty because of, or by virtue of, her relationship as trustee. The case law that you referred to, Justice Thomas, based on the statute, and the case law interpreting the Wrongful Death Act, all say that the trust, that the person who is the administrator of the estate for purposes of pursuing the Wrongful Death Action, stands in the position as trustee. So, Justice Carmeier, in your example, if the lawyer did go out and give it to some third party on the street, his cousin, his mother, his grandpa or grandma, in that instance, yeah, I think the attorney would have some trouble. But in this case, the money went to the administrator, the trustee, Leona. And who, with the added fact here, was appointed plenary guardian over the person of Perry. So she stood as trustee not only by virtue or in virtue of her position or appointment by the court in 1997, when she was made plenary guardian, but when the court allowed the Wrongful Death Action to proceed, she also stood as administrator of the estate, which is somewhat confusing, based on the case law that you discussed, Justice Thomas. She stood in the position as trustee there. So the money in this instance didn't go out to a third party. And Justice Burke, you asked about DeLuna. DeLuna was, Tim Eaton argued it for us, but we wrote the briefs in DeLuna, and we represented Mr. Bursiaga. In that case, the court, in the one paragraph, did allude to the fact that the attorney owes a fiduciary duty to the client. And in that instance, if I remember right, we were discussing the statute of repose, and there was an allegation that Mr. Bursiaga misled the client. And the court said, in that instance, we looked to, did the attorney have an affirmative obligation to report something, the status of the case? And the court said, well, in that instance, the attorney would have a fiduciary duty to the beneficiary of the Wrongful Death Act. And I don't think the decision, I say this, it was not wrong. I mean, right? So if we're communicating with somebody in the status that we're supposed to be representing their interests, and I don't want to give up that point yet, because I don't think they fall into a third party beneficiary under the case law, but they do have a duty in that instance to communicate in a truthful manner. So if we can say that that's a fiduciary duty, then I think in that instance, yes, the court reached the right decision, that certainly we as lawyers, in the instance of representing the estate in a wrongful death case, have an obligation, an absolute, to speak truthfully to people about the status of the case. Which takes us to, Justice Thomas, your question on the third party beneficiary. When we go back to 1982 in Pelham v. Greichheimer, and the court here was very narrowly construed, how far do we extend the third party beneficiary doctrine because of the conflicting relationships that you might end up having? And in Pelham, it was an interesting case because there was a $10,000 insurance policy, and the mother was divorced from the husband, and the kids were supposed to be on the policy, and they weren't. It went to the new wife, and the kids said, well, the attorney representing the mother should have made sure that the designation of beneficiary form should have been changed. And certainly, one would say, yeah, that should have happened, but the court said, if we go down the line of saying that the attorney owed the kids a duty in that instance, what happens if the mother wanted the insurance policy and didn't want it to go to the kids? There'd be a conflict. There's no way the attorney could protect both the interests of the mother and the children. And Justice Thomas, I think that's why in this case, although the beneficiaries of the estate certainly are intended to benefit from the attorney's work, I don't think under Pelham we can say that, therefore, a duty is owed to them. Because in this instance, you could have the potential for conflicting interests. One of the beneficiaries in a case may be contributory negligent. Let's say there's ten kids, and the person who dies is in the car with one of the kids who's driving. And that kid is out drinking and driving, smashes into a tree and kills the dad. The nine other children don't sit in the same shoes as the one who killed the dad because he's driving and drinking, but he, under the wrongful death statute, is entitled to recover. But certainly his interests, because the lawyer representing the estate is not going to let the other nine or the bundle of money that he's collecting be disturbed by the conduct of one, and the courts have recognized that, that creates a conflict. Ms. Argentati mentioned investigation a number of times, that there would be a duty to investigate. If knowledge came to the attorney that would create somewhat of a conflict situation, is there a duty in that scenario or not? Yes. I don't think there's a duty because there could be a conflict. And that's the line of cases under Lease and Kurt, Justice Teese and Lease. You didn't say there was a conflict. The concern, Justice Thomas, is that there could be a conflict. And that's where, what we do and how we tell clients and report to clients and what we say to clients, it's never an easy thing to do because of all the conflicting interests that come into play. So I think the courts have always said, Justice, is that it's not just when a conflict arises. Frankly, that's where most lawyers get in trouble, because they wait until the conflict arises when they should have recognized it years before and said, I better not even be in a position. And Justice, that's in Lease, you followed the Kurt decision. And there you said, nobody talked about an actual conflict. You talked about potential conflicts. And that's the way we're trained, is we have to see in the future. Could there be a conflict? In this instance, the Johnson case, I think, best does it. I understand, and let me get my thought together here. I understand what the statute says, and I can't remember which case spoke about it, but there are three, the Bays, the Johnson, and the third I'm not going to recall. I'm out of time, but I'll address it when I get back up. You're good. The red light goes on. Oh, okay. So the courts recognize is that it is certainly for the benefit of the beneficiaries, the wrongful death statute. I mean, it is the money for them. But how is that any different than in the action of an estate? Let's say this were both a wrongful death case and a survival act. And let's say a portion of this money came under the survival act. And the same thing happened here. The money goes out and it goes to Leona, and allegedly she doesn't spend it for the benefit of Perry. If we follow the line of Leese and if we follow the line of Kirk, well then, in this instance, the lawyer didn't breach a duty because it's the survival act which goes under the probate act. And if we follow the line of decisions, he did nothing wrong. But if we look at the wrongful death act and we say, well, under here, because it's for the benefit of the beneficiaries, for their direct benefit, we're doing something wrong. You can't, it's got, it must be uniform. The bundle of money comes in and it goes to the trustee, it goes to the administratrix, and the only way it will ever work, ever, and the Johnson court points this out, is the first part is collecting and the second part is distributing. Once it goes to the administrator, it's the responsibility of that person. And it's a hard pill to swallow in this case because we say, well, Perry got nothing, supposedly. But that doesn't leave Perry without a remedy. So it's not too hard of a pill to swallow. I mean, the remedy is against the person who supposedly spent the money wrongfully. And if she was misguided, Justice, if she was misguided, then that's what the law protects because the attorney had a duty to her. And frankly, the cause of action doesn't belong to Perry, it belongs to the administratrix. So in the end, nobody's getting away with anything here. I don't, I don't. Thank you. Thank you. Good morning. Good morning. Mark Belonging, on behalf of the appellant, the estate of Perry Powell, counsels. I'd like to start off with the discussion of the conflict issue. I think it's very telling that the defendants didn't feel there was a conflict or potential conflict in this case until they were defendants in this malpractice action. For the entire pendency of that underlying case, at no time did any of the defendants feel they were in a conflict position. Did they declare a conflict? Did they advise anyone that they needed to get separate counsel? At no time did they feel there was a conflict. It wasn't until this case proceeded that they then came forward and said, well, actually, we don't owe a duty to anyone in this case, essentially, other than the administratrix, because there's a conflict. At no time did they ever advise Perry Powell, advise or have a guardian set up for him, advise Emma that there was a conflict. It was only until this case began. And to carry that out, the conflict argument that has been raised by counsels essentially says that in any wrongful death case that there's an immediate conflict that the attorney for the administrator or administratrix is only representing that individual, which flies in the face of, and several of the justices brought it out, the Wrongful Death Act as it stands, and as it's been interpreted by this very Court. How do you describe the scope of the duty that you attribute to the defendants? I would describe the scope of the duty in some ways as they brought up, frankly, in that the duty of the attorney representing the estate is to represent that estate during the penancy of the prosecution of a wrongful death action, and at the time should a conflict arise at the time where the circuit court is going to make a determination on dependency, and there is a conflict, the point then, and Justice Thomas brought this up, is the attorney's job to then advise the individual beneficiaries that a conflict has arisen, that they'll need to seek separate counsel. There's a process in place under the Act where there's an evidentiary hearing where the circuit court then hears the various arguments of the beneficiaries of the state as to their version and position on dependency, and then makes a finding. Do they have a duty to investigate? Investigate what aspect? Investigate as to whether there's a conflict among the interests of the beneficiaries. I think their duty is to, once their settlement has been reached, is to advise all the individual beneficiaries as to that amount, and then determine in conversation with those individuals whether there's an agreement as to the distribution, and if there is not an agreement, I think right there the conflict arises, and that the advisement of the counsel has to be that each individual beneficiary, when they need to get their own counsel, for purposes of the evidentiary hearing for the circuit court to make the determination on dependency. Is there minor beneficiaries? I believe it then, I think the problem, which goes to my next point, but we'll go there now, is under the Wrongful Death Act, as well as in this case, the local rules of circuit court of Cook County 6.4, 6.5, would say a petition needs to be set forth in the probate division, a minor's estate for purposes of approving the settlement must be established, a guardian appointed, and I think at that point the guardian takes the position of disputing dependency with their counsel in the lot division as part of the process. If we accept that as the duty, wouldn't there always be the potential for conflict on distribution, even if it's carved up in equal shares? I think there always is a potential for conflict on distribution. In every case and every time the act sets forth the process, and that is the lawyer should be... So the attorney would have a duty then on distribution to say there could be a conflict between your interests and the interests of other beneficiaries, so you should consider getting your own counsel? Absolutely. Is that what you're, I'm trying to get a definition of exactly what the lawyer is required to do. Absolutely, and I think that in practical terms, I think that's what happens every day over here at the Circuit Court of Cook County, because I've been involved in those cases and that's exactly when the conflict arises, individual beneficiaries get their own counsel, and there's an evidentiary hearing at that point to determine dependency, and everyone has the opportunity to present their position. So I think that's when an actual conflict arises, and I think the practical way that the conflict is handled, and I think handled well on a regular basis. And importantly in this case, again, I think it's a little bit of a red herring in that there was no conflict here, there was no disagreement. The issue with the case and the allegations of negligence as against the defendants, derived from their, and it's interesting in the literally many, many, many pages of briefs submitted by all the parties, especially the defendants, they never once touch on the obligation on the Wrongful Death Act and the Volcker Rule 6.4 and 6.5 that deal with the process to approve the settlement for a disabled person. And they fall back and say, well, Judge Egan's order is good enough. She approved the settlement and the distribution. Well, importantly, and I need to point this out, in this case, and Mr. Wunsch admitted this in his stipulation before the ARDC, they did not present the full information to that Perry Powell Jr. was physically handicapped. They did not present the information that he was mentally handicapped. And as a result, the order did not have the language, Judge Egan's order, which specifically is set forth in the Volcker Rules that says this order is, you know, subject to approval by the probate court, and no probate estate was set up. That's the issue in this case, and at no time did the defendants in any of their the fact that they did not comply with this and that these orders are not voluntary. It's the orders of the Circuit Court of Cook County. When you handle... Is it your position that the lawyers had an obligation to find out somehow that allegedly Leona was taking from Powell's proceeds of the settlement? Absolutely not. That should never have happened. Had they followed the process, the process set forth by the general orders of the Circuit Court of Cook County, that never would have happened. That wouldn't have happened because the probate estate would have been established, there would have been an administration by the court, and she would have required to have an accounting of the money spent for the benefit of Perry Powell. So it never would have happened. Had they followed the process, and again, not a voluntary process, the process that's set forth by the Circuit Court. I think, Counsel, the wunches indicate that the mother was appointed as the plenary guardian of the person and the estate, and that therefore when money was paid over to that guardian, that ended any obligation to have. How do you respond? I would disagree with that vigorously, Justice, in that the process laid out in the which is dated March 2007 in the Circuit Court of Cook County, as well as the general orders specifically say that an attorney handling the settlement of a minor's case or a disabled person's case under the Wrongful Death Act for Personal Injuries, there's a mandated process for that specific matter. That specific case has to be brought before the probate court for the probate court's administration of the proceeds from that case. Being a plenary guardian prior in the past is not sufficient for the purposes of this process, which is, again, mandated by the Circuit Court. Does that mean opening a separate probate estate? I would argue yes, Your Honor. Okay. So even though there was a plenary guardian appointed who ostensibly could have received the proceeds, the local rule requires in wrongful death proceeds that a new estate be opened and another guardian be appointed to accept the proceeds? It could be the same guardian, but the court has to oversee the administration of those proceeds from that case. And specifically, it also sets forth, importantly, and why I say that a separate estate has to be set up, is that it requires that the guardian either have a post of bond or other security in their role as the guardian for the proceeds of that settlement. So, you know, being a plenary guardian, they may have no bond, which obviously this Act requires the posting of security or bond for the overseeing administration of those proceeds from that case. Even though she was a guardian of both the person and the estate? Absolutely. So we take the position that the conflict is essentially a red herring to this case. Justice Garmon, we discussed and I think we addressed the issue in a general sense, and I think what we discussed is a practical, real-life example and process that allows for the Wrongful Death Act as it stands to work, to be administered, to be utilized. If you take out the position logically of my opponents here, it takes it to the point where the Wrongful Death Act is unworkable because the conflicts begin from the very beginning. And everyone should have counsel right from the very beginning because the conflicts exist, which is exactly what the Act says you're not supposed to have. You're not supposed to have independent lawyers advocating the rights of the deceased in the Wrongful Death Action. It's a nominal plaintiff for the surviving spouse and next of kin. And again, if there is a conflict at time of distribution, there's a process in place, counsels get involved, and there's an evidentiary hearing. On the proximate cause argument that counsel raised at the very end, I'd like to address that as well. And I think the appellate court hit it on the head when the appellate court found that the approximate cause was pled properly for the purposes of a 615 motion that, as Justice Thomas and I talked about, and Justice Carminer, had the process been followed, the money would not have been absconded by Wiona Smith because it would have been subject to a probate estate with supervision of the court and the proceeds would have been safeguarded, as well as would have bonded security. Had the money gone missing, there would have been a problem. And I think the appellate court, in this case Perry Powell, would have had the use of those funds to take care of his needs, as was the original intent under the settlement. So I believe, and we believe, that the proximate cause issue was also properly addressed, A, in the complaint, all four of them, as well as in the ruling by the appellate court. So, you know, we ask that this court affirm the We believe affirming the appellate court in this case also basically coincides and agrees with the Dillema case, the Carter case, the case law, as well as the wrongful death statute. So we believe affirming the appellate court is the consistent, proper ruling in this case. I take it, based upon your comments and argument, that the guardian did not have a bond in this case. Would that have taken care of the situation? And then does the attorney who's making the distribution have an obligation or a duty to determine whether a guardian does have a bond? Interestingly enough, Justice, that's a great question. That's what the probate court does. The probate court oversees, determines if a bond is necessary, and if a bond or other security is necessary, the court is the party who determines that. And in most cases, that bond is in place. And the reason it's in place, should something happen like it happened here, the bond is utilized to then replenish those funds which were wrongfully taken. Thank you. We didn't address the conflict because, at the time of the provision of legal services, it was our impression, based on Illinois case law, there was no conflict. We represented the estate. There's a long line of cases that deal with the estate situation. Does an attorney who represents the estate represent the beneficiaries? And does the attorney's job is to benefit the entire estate? And the answer is no, it does not. The attorney's job is to benefit the entire estate, to do what he can to benefit the entire estate. Could you address the questions here specifically about the interrelationship between the Wrongful Death Act and the Probate Act? What we've been speaking broadly about the duties of all attorneys to all clients. Here, the facts in the complaint seem to allege that the attorneys met with the family, including the disabled adult, so they were aware of who he was. And here, the allegation is that they, the lawyers advised Leona and Emma that it was too much trouble to go to probate court to distribute the settlement funds for Powell. How does the  of the lawyer to pursue the Wrongful Death Act interplay with the Probate Act and specifically the rules in Cook County? First of all, we deny that factual allegation that the attorney made the comment that it was too much trouble. That was not the issue. The issue was what duty did he have to the administratrix. And by the way, the trial court, Judge Egan was advised of the disability of the adult and that there was a guardianship in place. She was not advised of the disability of the adult. She was not advised of the disability  And so the question is, between the acts, that's the problem right here. Who does the attorney owe a duty to? And it's our contention that the primary duty is owed to the administratrix, the representative, and that if the court, if this Court does not have a duty to consider the Probate Act and to consider the rules, circuit court rules in Cook County in terms of the distribution of the claim, the award. I believe, I believe, yes, there is a duty to do that and I believe it was complied with here. There was, there had been a guardian appointed. She was the guardian. She had a joint role here, joint responsibilities. There was a guardianship that had been adjudicated and Judge Egan was aware of that. So your point is, there is a duty by the attorney who brings the suit on behalf of the estate to comply with the Probate Act and the rules of Cook County and, but that is, you agree that's a duty. You're just saying that they did, despite the allegations, and this is at 2615, you'll have an opportunity to discuss that, but you are conceding or you're saying, I think, so I can be clear, that there is that duty to follow the Probate Act and to follow the rules of circuit court in Cook County in terms of dealing with a disabled or a minor adult. I think we do, I and my clients do have a duty to follow the law. I would agree with that and I think that was done here. The dependency is not an issue. Was there a probate action then? Excuse me? Was there an alleged probate action for the alleged disabled person's estate? Not subsequent to the settlement. The guardian had already been appointed at the time. Under what statute? For a disabled person? For a disabled person, yes. But it was only of the person, not the estate. Well, it's a plenary guardian. She was appointed plenary guardian. Of the person? It says plenary guardian of the person, my understanding of the law. But not of the estate, because it's a bifurcated system, isn't it, under the statute? I would agree with that and that's somewhat confusing, because you see in some places it's plenary guardian of the person, you see in other places plenary guardian. But even as plenary guardian of the person, she's responsible for taking care of his needs, his his Right, but not the estate, not the money that comes in. And I would disagree that the law is very clear on that when she is appointed plenary guardian. And although she's referred to as plenary guardian of the person in some places, she's referred to plenary guardian, period, at the end. And the court, trial court, allowed her to be the recipient of those funds. And we get back to, okay, what's our duty? When embezzlement can, even if a, even if a probate court case had been started, that doesn't prevent embezzlement. It doesn't prevent misuse of the funds. And to say that misuse of the funds would not have occurred, there's no facts pleaded in this matter, as it appears before this Court. That's pure speculation. In fact, it's our position on the proximate cause argument that there's been nothing set before the Court other than the conclusion that Perry would have been in a different position had the alleged negligence not taken place. That's nowhere in the I thought it was that Dunnebath was appointed guardian ad litem to represent Powell. And he filed an emergency petition on temporary guardian of Powell's person, person only. Okay. Well, I was talking about Leona Smith and what her appointment was at the time that my clients provided the legal services. And at that time, Leona, the administratrix, was also the guardian. But not of the estate, as you said. Yeah. Okay. Thank you. Okay. Thanks. Justice Tice, can I, the question you asked, is there a duty, but the answer is, yes, there is, but again, it's to whom? So, in your example, the duty is to the administrator. So, again, I go back to, if there was a problem here, if the local rural six-and-a-half 6.2 and 6.5, and if Section 2 of the Wrongful Death Act, regarding the distribution, was not followed, then it's the administrator who has the cause of action, who has the relationship with the attorney. So, there's the duty. So, the real person that should be bringing the cause of action, if there was a mistake in that process, if we're going to stay consistent with the line of cases of Lise and Kirk, is the administrator. It's Leona, not the beneficiaries, because you run into the potential conflicts that Lise was concerned with, that Kirk was concerned with, and all the other cases that are cited in those decisions. Is it your position, counsel, that there was no duty to open up a probate estate subsequent to the settlement, because, as Ms. Argentati had indicated, there was already a guardian, or is there never a duty? No, I think there's a duty to the administrator of the estate. In this case, the duty is to Leona, to make sure it's done appropriately, not to the beneficiaries. So, there was never a duty? Never to the beneficiaries. You can't... Because you heard Ms. Argentati talk about how there was already a guardian in this case, but your position is, in no circumstances would there be a duty, because that duty would then be to the beneficiaries in opening up the probate estate. Yes, and that's where you fall into the line of cases that say there's a potential for conflict, and you avoid all of it by just, at that point in the distribution process, Mr. Ballard... Is that contrary to rule, in keeping with Justice Tyson's question? No, because the rule doesn't create a duty. The rule doesn't create a duty. The rule says what should happen. In fact, if you look at the rule, it actually puts the obligation, just like an estate... Remember, when Leona became the administrator of the estate, she signed an oath. She's governed by the court. So, she was the person responsible, and if the attorney was supposed to drive her and assist her through that, and it didn't go right, then the cause of action is hers, not the beneficiaries, because of the huge problem where you may have a conflict... Is that contrary to what's happening all over the state in wrongful death settlements, though? I mean, aren't attorneys opening up probate estates all the time? The estate is opened... Cook County, I looked this up, is the only local rule that has that local rule issue, because when we practice out in the country there, the judges handle both probate, the civil, the criminal, and everything else, right? So, Cook County is the only one that has that little wrinkle to it. I don't know if I responded to your question, but yes, estates are open... Let's just deal with Cook County, since that's what we're dealing with. Okay, so estates are open, Justice. Are they open by the lawyer representing the administrator? They can be. But the question is, if something goes sour, if something goes bad, do the beneficiaries have a cause of action against the lawyer? Are we going to say that the lawyer owes them a duty? And I appreciate... It brings up an interesting question, though, right? If your duty is to the administratrix, in this particular case, we're saying that's where you're saying the remedy lies. Yes. Is there a duty of the law firm to indicate you better open up a probate estate in this case? If it is, it's to the administratrix. And if it's... Right. I don't want to throw any... Well, that's what I'm asking. Yes. So if there's an action against the administratrix, you would be saying that that would be the proper time for the administratrix to come against the law firm and say, you never told me that I had to open up a probate estate. Exactly. And that's not the cause of action. That's not what's been pled here. And that's why, in the appellate court decision here, when they stop, they stop the analysis and say, well, this is a wrongful death. It's for the benefit of the beneficiaries. That ignores the reality is that you have an administrator that's running the show. And the Johnson case really spells it out, the Second District case. It says it's a two-step process. The first step, the lawyer would never really be in conflict because he wants or she wants to get as much money into the estate. Once the money's there and you get to the distribution part, that's where you have to follow, if we're going to be consistent, the Lease line of case, the Kirk line of case, that's where it falls more into the area, the attorneys representing the estate, and the potential for conflict is astronomical. And we can't put the lawyer in a position where he or she is making those decisions. It has to be uniform. It can't be, say, well, in Perry's case, it's different. It has to be a uniform duty. Otherwise, you have lawyers out there that are, that don't know how to go about handling the situation. And that's right there. But we're not talking about any kind of conflict. We're talking specifically about the issue where there's a disabled adult or minor and there is a statute that deals with how settlements are supposed to be dealt with and distributed in terms of disabled adults or minors. So that's not open conflict and concerns about every kind of case. We're just talking about what happened in this case. But let's say there's a dispute. Let's say Leona wants more money than Perry, because that could happen. Then who does the lawyer side with? So that's why there's the conflict. Even if it didn't occur in this case, you have to focus on the duty and to whom the duty is owed. And, again, if there was a mistake in the distribution and the law wasn't followed, that's the administratrix's cause of action. Not that I want to help anybody out here, but the wrong party's here. It's the wrong party. Thank you. Case is number 115-997-116-009, Consolidated, State of Perry-Powell v. Wunsch-Phillips et al. It's taken under advisement as agenda number eight. Ms. Argentati, Mr. Panacek, Mr. Belong, you're excused at this time, and thank you for your arguments today.